CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 01 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHARLES F. LAYMAN, | ) CASE NO. 3:09CV00017 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) By: B. Waugh Crigler<br>) U. S. Magistrate Judge |
| Defendant. | ) |

This challenge to a final decision of the Commissioner which denied plaintiff's October 5, 2005 protectively-filed claim for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge ("Law Judge") concluded that plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date, December 31, 1999, through his date last insured, December 31, 2004. (R. 17.) It was determined that plaintiff suffered the following severe combination of impairments: lumbar degenerative disc disease

status post L4-L5 discectomy and obesity[1]. (*Id.*) The Law Judge found that his impairments did not meet or equal a listed impairment. (R. 18.) He also determined that, although plaintiff's medically determinable impairments reasonably could be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. 21.) The Law Judge then found that, through his date last insured, plaintiff retained the residual functional capacity ("RFC") to perform less than a full range of light work. (R. 18.) Specifically, the Law Judge found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand/walk for about six hours in an eight-hour day, sit for about six hours in an eight-hour day, and push and pull up to twenty pounds occasionally and ten pounds frequently with his upper and lower extremities. (*Id.*) The Law Judge further found that he could perform occasional balancing, stooping, kneeling, crouching and crawling, frequent climbing of stairs or ramps, but never climbing ladders, ropes or scaffolds. (*Id.*) He then concluded that plaintiff remained capable of performing his past relevant work as a patient services clerk and a shipping clerk through the last date he was insured. (R. 22.) Thus, at that level of the sequential evaluation, the Law Judge found plaintiff was not disabled under the Act during his insured period. (R. 23.)

Plaintiff filed a timely request for review of the Law Judge's March 30, 2007. (R. 5-7.) The Appeals Council found that neither the record nor the reasons advanced on appeal provided a basis for changing the Law Judge's decision. (R. 5-6.) Accordingly, the Appeals Council denied his request for review and adopted the Law Judge's decision as the final decision of the

---

[1] The Law Judge noted that the record reveals plaintiff to be 6'4" tall with a weight ranging from 205 to 300 lbs. (R. 17.)

2

Commissioner. (R. 5.) This action ensued.

In a brief filed in support of his motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding that he did not meet 1.04(A) of the Listings, 20 C.F.R. Part 4, Appendix 1. (Pl's Brief, p. 6.) To support this contention, plaintiff refers to a collection of some 40 pages in the medical record and offers the conclusion that, "Mr. Layman's back chronic impairment meets or equals the criteria for Spine Disorder Listing 1.04." (Pl.'s Brief, p.6; R. 150-190.) In other words, he is asking the court to dive into the record to figure out for itself whether the listing's criteria have been satisfied.

A person is disabled under Listing § 1.04(A) if he person suffers a spinal disorder resulting in compromise of a nerve root or spinal cord together with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix1, § 1.04(A). Plaintiff has the burden of proving that his back disorder meets or equals a listing. *See Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) (noting the claimant has the burden of showing that he has a medically severe impairment or combination of impairments and that the Act requires him to furnish medical evidence regarding his condition); *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (stating that the burden of production and of proof is on the claimant to establish that he has an impairment that meets or equals a listing).

As indicated above, plaintiff has invited the court to determine for itself whether the collection of medical information satisfies the regulatory requirements for a listed impairment.

3

He has not pointed to any particular physician's evidence from which the court could glean an interpretation that those requirements had been met. In fact, there are indications from the physicians notes, themselves, that, while rather chronic, the effects of plaintiff spinal condition range from slight to mild to moderate to severe. (R. 150-171.) Of course, the more severe effects presented just before and after surgery. The court is not a medical expert who is equipped to interpret this medical evidence in order then to ascertain whether the § 1.04 criteria have been met. The presiding District Judge should decline any invitation to do so.

Next, plaintiff argues that the Law Judge erred in finding that he retained the RFC to perform his past relevant work as a patient clerk or a shipping clerk. (Pl's Brief, pp. 6-10.) Plaintiff contends that the Law Judge's finding that he could perform his past relevant work required the Law Judge to give the State agency medical records reviewer controlling weight. (Pl's Brief, p. 9.)

Under the regulations and applicable circuit decisional authority, a Law Judge and the Commissioner must consider the following in evaluating and weighing medical opinions: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart,* 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005)).

Here, it was determined that plaintiff retained the RFC to perform less than a full range of light work. (R. 18.) The Law Judge found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand/walk for about six hours in an eight-hour day, sit

4

for about six hours in an eight-hour day, and push and pull up to twenty pounds occasionally and ten pounds frequently with his upper and lower extremities. (*Id.*) He further found that plaintiff could perform occasional balancing, stooping, kneeling, crouching and crawling, frequent climbing of stairs or ramps, but never climbing ladders, ropes or scaffolds. (*Id.*)

Raymond P. Marotta, M.D. periodically has treated plaintiff since 1985. (R. 276.). On January 18, 2006, Dr. Marotta completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire"). (R. 226-229.) In the Questionnaire, Dr. Marotta noted that plaintiff suffered chronic back pain, weakness in the right leg, degenerative lumbosacral spine and had undergone back surgeries. (R. 226.) He believed that plaintiff could sit for thirty minutes and stand for fifteen minutes at time, and that he could occasionally lift and carry less than ten pounds, rarely lift and carry twenty pounds, and never lift and carry fifty pounds.[2] (R. 227-228.) Dr. Marotta was of the view that plaintiff could never twist or climb ladders and could only stoop (bend), crouch, and climb stairs on an occasional basis. (R. 229.) Finally, Dr. Marotta opined that plaintiff's impairments likely would keep him out of work on an average of more than four days per month. (*Id.*)

The Law Judge did not accept as controlling the evidence provided by Dr. Marotta because he found it contradicted by other record evidence offering less severe physical findings and rather routine or conservative treatment following his two surgeries in 1999. (R. 22.) The Law Judge also believed that Dr. Marotta's opinions were contradicted by plaintiff's activities of daily living, plaintiff's lack of pain management treatment, and Dr. Marotta's own treatment

---

[2]The physician failed to note how often plaintiff could be expected to lift ten pounds. (R. 228.)

5

notes. (*Id.*) Moreover, the Law Judge observed that the evidence offered in the Questionnaire did not appear to address the relevant time period. (*Id.*)

Dr. Marotta's Questionnaire was completed more than a year after plaintiff's insured status expired, and there is no indication suggesting that Dr. Marotta's views relate back to the insured period. Additionally, the record reflects, and the Law Judge observed, that Dr. Marotta saw plaintiff only on three occasions for his back pain during the relevant time period. (R. 21, 182, 184, 188.) Prescribed treatment during this time consisted only of Aspirin on an "as needed" basis. (R. 182.) *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986) (noting that conservative treatment not consistent with an allegation of disability). Finally, plaintiff's activities of daily living belie the disabling effects reflected in the Questionnaire. Plaintiff testified that he is able to cook, launder his clothes, shop, wash dishes, take short trips, walk "a lot" and lift light weights. (R. 283-285, 288.)

Plaintiff underwent two surgeries on his back in January and July 1999. (R. 271.) Plaintiff points to a single notation by his then treating surgeon, Donald Chan, M.D. stating, "The pain is debilitating and affects his ability to walk and to continue with his work." (R. 157.) This notation was made in plaintiff's chart just *prior to* his second surgery. After having his second surgery, plaintiff reported walking on an average of thirty minutes per day. (R. 289.) Other than this one isolated notation, Dr. Chan's records fall short of showing that plaintiff suffered from disabling back pain. (R. 150-170.)

Chris Newell, M.D., a physician with the Virginia Department of Rehabilitative Services, conducted a State agency examination of the plaintiff on March 9, 2006. (R. 230-233.) He found that plaintiff suffered chronic low back pain which allowed him to stand and walk no more

6

than two hours in an eight-hour workday, and sit for four to six hours in an eight-hour workday. (R. 232.) Dr. Newell opined that plaintiff frequently could lift/carry five pounds and occasionally lift/carry no more than ten pounds. (*Id.*) This examiner believed plaintiff would need to have frequent breaks and changes of position, and that he should avoid bending, stooping and squatting. (*Id.*)

The Law Judge gave Dr. Newell's report only "minimal weight" for three reasons: 1) Dr. Newell's conclusions were based more on subjective complaints than on objective evidence; 2) His assessment of plaintiff's limitations did not reflect plaintiff's condition during the relevant time period; 3) His finding that plaintiff could not sit long enough to engage in work for an eight-hour workday was inconsistent with the other evidence of record. (R. 22.)

It is true that there are reports from other State agency record reviewing physicians which tend to support the Law Judge's finding that plaintiff could perform his past relevant work. Syed S. Hassan, M.D. evaluated plaintiff's medical records and completed a physical assessment which evaluated plaintiff's capacity as of the date he was last insured. (R. 220-225.) Dr. Hassan noted that plaintiff's daily activities revealed a capacity to use public transportation, shop for food and clothes, cook, do housework and laundry. (R. 225.) By the same token, Dr. Hassan found that plaintiff only could occasionally perform the following activities: balancing, stooping, kneeling, crouching, crawling, and climbing ladders and scaffolds. (R. 222.) He believed plaintiff frequently could use ramps and climb stairs, but that he never could climb ropes. (*Id.*) From this, he opined that plaintiff was capable of performing light work, and his opinion was echoed by another record reviewer, William Amos, M.D., to the extent that Hassan opined that plaintiff retained the RFC to perform light work. (R. 221, 238-244.)

7

While the undersigned has reservations about the propriety of crediting the record reviewing evidence over that of the examining source, particularly one engaged by the State agency on behalf of the Commissioner, whether Newell's evidence should have been credited at all actually turns on the fact that his examination occurred about a year and one-half after the expiration of plaintiff's insured status. Absent evidence of some relation back to the insured period, and there is none here, Newell's evidence simply is not relevant.

Finally, plaintiff argues that, under the circumstances, the Law Judge had a duty to obtain additional information from his treating sources. (Pl's Brief, pp. 10-11.) Admittedly, the Law Judge has a duty to develop the record beyond the evidence submitted by the claimant when that evidence is clearly inadequate. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty, however, should not be used to circumvent a plaintiff's burden of proof. The undersigned cannot find that the record before the court was sufficiently inadequate to mandate further development of the record by the Law Judge.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual

recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

Oct 1, 2009
Date

9

Case 3:09-cv-00017-NKM-BWC Document 16 Filed 10/01/09 Page 9 of 9 Pageid#: 72